317-0757, John Daly, acknowledged by Jacob Frost, v. Barash and Everett, LLC, in Clinton Block, heavily advised by Conrad. Thank you. Mr. Frost, good morning. Good morning. My name is Jacob Frost, appearing on behalf of Mr. John Daly, counsel. Your Honors, may it please the Court. The central question presented is whether Section 204B of the Code of Civil Procedure, which by its terms governs actions for indemnity, preempt all other statutes of limitation and repose such that an implied indemnity action brought after the legal malpractice statute of limitations and repose periods had run, but within the two-year period of time from when Mr. Daly was served with process in the underlying mortgage foreclosure action, would be timely filed under Section 204. The trial court found that Mr. Daly's third-party complaint for an implied indemnity was barred by the statutes of limitations and repose that apply for legal malpractice actions and dismissed the third-party complaint on that basis with prejudice. We respectfully suggest that the provisions of Section 204B and C operate as they read and that the statutes of limitation and repose for legal malpractice actions are expressly preempted by Section 204. The secondary question is if Section 204C and C do not expressly preempt the legal malpractice statutes of limitation and repose, should the dismissal have been without prejudice where, number one, Mr. Daly specifically requested leave to file an amended complaint in his written response to the motion to dismiss, and number two, Mr. Daly's response to the motion to dismiss included an affidavit signed and sworn to by Mr. Daly himself which laid out specific facts that, if taken as true, would support an equitable estoppel claim that would have told the legal malpractice statutes of limitation and repose here. With that overview, I'll get to the facts. In 2006, Mr. Daly engaged the third-party defendants to represent him in his Chapter 13 bankruptcy proceeding. All agreed that third-party defendants made significant mistakes in his Chapter 13 plan. Payments were not directed to be made on the second mortgage, which is now an issue in the underlying mortgage foreclosure case. Mr. Daly was led to believe by his attorneys from day one that the second mortgage was being stripped off or being avoided. The lien itself was being avoided in the bankruptcy proceeding. Is it the same as discharged? Well, when we refer to debts being discharged, that's one thing. If a debt is discharged in bankruptcy, the lien might still exist after the discharge of the debt. So my understanding of the terminology is that liens are avoided or stripped off in bankruptcy proceedings, provided the proper motion is made and things are done the way that they're supposed to be done. It wasn't until June of 2011 that a new attorney at third-party defendants' firm recognized the mistakes and filed a motion to amend the Chapter 13 plan to strip the lien of the second mortgage holder. However, for reasons stated by the bankruptcy court, which are contained in the transcript that is an exhibit to Mr. Daly's response to the motion to dismiss, it was too late at that point in time for the bankruptcy court to avoid the lien or modify the plan. So the lien continued. From that time until February of 2016, third-party defendants' firm continues to advise Mr. Daly about various correspondences and notices that he receives from the miscellaneous and sundry debt buyers of this second mortgage. Third-party defendants' firm would send Mr. Daly correspondences stating, quote, I don't believe it to be wise to consult with them any more than you have to. Keep me advised as to current events. They might just disappear quietly away, end quote. And, quote, if you are served with a foreclosure summons, let us know right away, end quote. These correspondences reasonably led Mr. Daly to believe that his attorneys, who all admit made a mistake, were going to make it right. Mr. Daly had no reason to bring suit against these attorneys that consistently indicated to him that either this creditor was going to go away or that they would be there to assist him and make things right. It wasn't until February of 2016 that Mr. Daly received a much different sort of communication from third-party defendants. He received a letter in February of 2016 to, quote, confirm that Baranch and Everett LLC is not representing him, end quote. By November 21, 2016, that same year, the second mortgage holder had filed a foreclosure action against Mr. Daly, a process for which was served on Mr. Daly on December 13, 2016. A couple of months later, on February 24, 2017, Mr. Daly had filed his third-party complaint for implied indemnity against his former attorneys. Here, because Mr. Daly brought his third-party complaint for implied indemnity well within the two-year period called for by Section 204B, starting from when he was served the process in the underlying mortgage foreclosure case on December 13, 2016, his third-party complaint was timely filed and the legal malpractice statutes of limitation and oppose were preempted by Section 204C. The cases cited by third-party defendants before the trial court and before this court in Appleton Street that deal with Section 204 are all medical malpractice cases. And Section 204B specifically governs medical malpractice cases in the context of indemnity and contribution. It doesn't apply to other sorts of cases that would fall under the purview of Section 204B and C, including this case. For this reason, Mr. Daly's third-party complaint should not have been dismissed with prejudice as barred by the legal malpractice statutes of limitation and oppose, as those statutes were expressly preempted by Section 204B and C. I should note that one of the issues that remains pending in the trial court in this case is whether or not the underlying mortgage foreclosure action was barred by a 10-year statute of limitations provided in Section 15-115 of the Code. For purposes of Mr. Daly's argument today, it's assumed that the mortgage foreclosure is not barred by the 10-year statute of limitations. Of course, Mr. Daly's argument here today should not be construed as a waiver of that issue, which is not before this Court. Lastly, for the sake of argument, if we ignore Section 204B and C's preemption, express preemption, of all other statutes of limitation and oppose, Mr. Daly had specifically asked the trial court for me to file an amended complaint, and he had filed an affidavit with specific facts on which the trial court could determine whether or not Mr. Daly could even state a cause of action for equitable stoppage. Here, Mr. Daly was given no opportunity by the trial court to even file a first amended complaint. Mr. Daly's initial complaint, right out of the gate, was dismissed with prejudice. There was no film by the third party that demonstrated that they would be unruly, prejudiced, or surprised by an equitable estoppel claim, given that it was entirely based upon their own words and their own conduct. Less than five months elapsed from when the third party complaint was filed to when it was dismissed with prejudice by the trial court. For all of these reasons, upon John Daly's request that the court reverse the trial court's order dismissing the third party complaint, when it's filed indemnity, with prejudice, even if Section 204C and C are found to be inapplicable here, which we're not conceding would be the case, at the very least, Mr. Daly should be afforded at least one opportunity to amend his initial complaint, given the fact supported by affidavit that had been before the trial court prior to the dismissal. Any questions? Thank you very much. I have a quick question. I call it the lay low email. The lay low, don't say anything, maybe they won't notice. Do you think that constitutes legal malpractice? It could. It could very well. I've not given it much thought as I stand here, but at the very least, it would serve to lull anybody into a feeling of being comfortable, not feeling like bad things are going to happen, not feeling certainly like that they might need to giddy up and sue their attorneys for the mistake that everybody admits that they made. That occurred on February 28th of 2013. Would that have still fallen within the timeframe necessary to initiate legal malpractice? Arguably, Your Honor. These are things that Mr. Daly ought to be allowed an opportunity to allege before the trial court. Thank you for answering my question. Mr. Frost, I have a question. I ran across a Supreme Court case, Guzman v. C.R. Epperson Construction, that appears to hold that 304 does preempt 314. Neither one of you cited that case, so I didn't know whether I was reading it wrong, and it doesn't stand for the proposition that I thought that it did stand for, but it seems to me that the gist of that case is that when you have a situation alleging indemnity, that 304 predominates over 314. As I stand here, Your Honor, I wish I knew that case. I wouldn't be surprised if that's what the holding of the case is, given the plain language of Section 304. Thank you. Mr. Unrath, for you it's good afternoon. It is just good afternoon. My name is Craig Unrath. I represent the police operation effort at Clinton Block. Your Honor, I'd like to first apologize for not finding the Guzman case. I'm not aware of the case, so I will be looking at that momentarily when I get back to the office. The citation that I have is 196 Illinois 2nd, 391, and it's a 2001 case. I will definitely look into that. I had argued that the issue was foreclosed by the Hayes v. Mercy Hospital case, also a Supreme Court case, and that may have caused me to decide that there was no need to look further, because, yes, it's true it addressed the medical malpractice statute of limitation and proposed. However, the language in that citation is identical with the limitation period in 214.3 for attorneys, so I didn't see any logical or reasonable explanation for not applying the Hayes case to the case at large. It's also important to point out that the Hayes case is not limited to its particular facts. The court relied on one of the most fundamental canons of statutory interpretation, which is that the specific is exalted over the general, that when you have a statute that is specific to a particular situation, it will always control over a general statute. And here we have a statute specifically designed for attorneys, which would prevail over a statute generally applying to contribution actions. The Ashley case, which we cited in our brief, is also important because it doesn't often condemn any action, and I thought that the court's analysis here was right on point. It said that indemnity and contribution are two completely distinct causes of action, but neither one of them affect the rights of the plaintiff. In other words, the fact that no matter what you have pled, whether it's contribution or indemnity, the fact remains that the plaintiff is still subject to statutes of limitation and repose. Now, the trial court granted a motion of dismissal based on both the statute of limitation and repose. I think that the repose argument is much stronger. That's why I spent much more time with it. But I think it's important to look at just what facts underlie the court's rule of defection. It did. As we all know, a statute of limitation begins to run when the injured party has reason to know of the injury. They will reasonably should have known of the injury for which damages are sought. Now, in this case, he was told in 2006 that his mortgage had been stripped off. It was gone. No need to worry about that. Yet, three years later, in 2009, he gets a letter from the mortgage company. Now, right off the bat, to me, I believe a reasonable person would find that it would be put on notice that something's wrong here. Now, shortly after that, that letter came out. The plaintiff had a conversation with Justin Raper, one of the attorneys for Barak. And they discussed the problems with the bankruptcy. The plaintiff denies that these conversations occurred. And that's fine. In March 2010, Justin Raper entered an appearance in the bankruptcy court. Why would he do that if there wasn't some kind of problem? A few months later, in November 2010, he filed a motion to modify the bankruptcy plan. Again, why would something like that be done unless there was a problem? Wouldn't that put a reasonable person on notice that there was a problem with this bankruptcy? Now, the plaintiff received copies of all of these pleadings. And he was in court when the judge ruled that denied the motion to modify the plan. So he must have known about this. He must have known about the actual motion itself, which explicitly stated that significant mistakes were made in the bankruptcy. We submit that the two-year statute of limitations expired at the latest by October 2012, and most certainly by June 23rd, 2013, when the motion to modify was actually denied or filed. The motion to modify was later denied, though, because counsel waited too long. Aren't I correct? I am. He got leave to modify, but then it was denied because everything had been distributed. I think that that's correct, Your Honor. So is that an act of malpractice, by not filing the motion to modify in time? He filed the motion for leave to modify as soon as he learned of the problem, which I believe was caused by the 2009 letter. I believe that the delay is referencing from 2006, when it should have been stripped off, until 2010, when the motion for leave was filed. Okay, I must be misreading the record because I thought he received leave and then he didn't do anything until a few days before everything was finished. I could be mistaken, though. I'll look at the record again. That's not my understanding of the record, Your Honor. I do know that he filed the motion for leave in October 2010, and the motion to modify about eight months later, June 23rd, 2011. So what happened with the motion to modify? The motion to modify was denied, and I believe that it was not because of the eight-month delay. Okay. I believe that it was not just because the bankruptcy had already run its course, that the plan was in effect, and I wish I knew more about bankruptcy law. It was my worst subject in law school. Terrible memories there. Anyway, I found nothing in the record suggesting that it was just the waiver's delay that caused the denial of the motion to modify. That's all I can say. Doesn't this fit? I'm sorry. But aren't his actions then in 2013 in response to Daley's legal questions to him? I mean, at that point, you know, there's some specific questions and some e-mails or some correspondence about I've received some type of a notice that Oclin is going to be handling the second mortgage account, and what does this mean? I don't think I – and Raver says, you know, it's – this is the first step in foreclosure. If you're served, let us know right away. It doesn't hurt to try filling out the application they sent you. You know, and Daley replies, well, if I remember correctly, this account was charged off before they got this mortgage, and the – I don't know what response then he got or if Kelly Franklin in the office contacted him, but they are telling him, you know, don't talk to these people or this is a first step. So at that point, aren't they committing either additional malpractice or misleading him? I can't say whether malpractice is committed because there may have been a reasonable assumption that nothing was going to be done with this mortgage, that it had been signed off, or it had been written off by the mortgage holders, and I believe that this was the motivation there. However, we're dealing with a motion to dismiss, and here I am telling you facts that are not up to record. The important thing here is that these allegations of malpractice in regard to the actual emails has never been alleged, that there's nothing in the complaint alleging that this is a specific claim for negligence. Which is the whole point for the alternative argument of give us a chance to replete. And, Your Honor, the claim for equitable estoppel has a number of problems with it, and the first is that I believe counsel mentioned that he filed this in a reply brief, that he mentioned the claim for equitable estoppel. My reading of the record is that judgment, the dismissal order had already been entered, that equitable estoppel was not raised until the motion should be considered. Now, there were, as counsel mentioned, there was an affidavit attached. However, there was no proposed amended complaint. There was never a formal motion to amend the complaint. There was simply an argument in the motion to reconsider that this might be something that the court should consider, but it was never filed. And when you don't submit for the court's review a copy of the proposed complaint, the argument is forfeited on review. But I don't know that that's the reason why the court denied the motion to amend. I think that it's more likely that the court looked at this and thought that this claim for equitable estoppel will not cure the defect in the complaint. And the reason for that is that there were no misrepresentations. There was no fraud here. My clients came out and told him specifically there were significant mistakes made by Clinton Block, and that's also shown in the pleadings that were filed in the bankruptcy court. They told him what had happened, and they were honest about that. At that point, that should have put Clinton on notice that he had been injured here and that he should seek other counsel. One other point that we raised in our brief is that when an individual knew or should have known of his injury or known of a fraudulent misrepresentation that underlies the claim for equitable estoppel, they can't sit on their hands. They have to take action. They cannot later use equitable estoppel as a shield to protect them against their failure to file a claim in a timely fashion.  Doesn't it begin to run with the last action that's taken by the attorney? The last act of negligence, yes, Your Honor. And it's been our position, and I believe that this position is supported by the allegations in the complaint, that the last act of negligence occurred in 2006 when Clinton Block neglected to strip off his mortgage from the bankruptcy plan. And under the statute of proposals, we all know the date that the action accrues is irrelevant. The court has, or the General Assembly has placed a final time limit upon which all liability, all potential liability ceases to exist. As one court put it, the statute of proposals controls regardless of whether the plaintiff, whether the cause of action is accrued or even whether it has been discovered. Counsel, two minutes. Okay, if the last act was the filing of the motion to modify in June of 2011, then the statute of repose hasn't run. It's four months shy of the six years. I agree with your calculation, but I disagree that this is a last act of negligence. This was an attempt to cure a problem. I don't see any negligence in the motion to modify. It was purely done as a means to resolve a problem. It did not create any problems at all. Okay. Thank you. If there are no further questions, we urge the Court to afford the affirmative. Thank you. Mr. Frost, rebuttal. Thank you. The 2009 letter that counsel referred to has been from PHH. PHH was the first mortgage holder. PHH was not a servicer or mortgage holder with respect to the second mortgage. And that fact was clarified in Mr. Daley's affidavit in support of his response to the third-party defendant's supplement motion to dismiss that was filed July 12, 2017, before the trial court entered a dismissal order. Mr. Daley's response that was filed July 12, 2017, before the trial court had entered a dismissal order, specifically contained citations to certain case law regarding the equitable, the applicable equitable estoppel claim. Also, it attached Mr. Daley's affidavit, which laid out those specific facts about the communications that Mr. Daley received from the third-party defendant's firm, communications that I've already discussed, but really the malpractice, the last act that occurred here, would be all the communications that Mr. Daley received from his former attorneys before those attorneys terminated the attorney-client relationship in 2016. What ought to have happened is his attorneys, who admitted they made significant mistakes in the bankruptcy, they should have advised Mr. Daley that they can't represent him anymore. Immediately. They should not have communicated with him to give him advice about whether or not the creditor would go quietly away, what to do if he served with a summons in a foreclosure case, to contact them right away. There should have been a correspondence from third-party defendants telling Mr. Daley, we are not your attorneys anymore. If you believe that you have a claim against us, you should consult other counsel without delay. That never happened. At best, the letter telling Mr. Daley that they no longer represented him in 2016, that really is the last act. They should have also, in the same letter, advised him that if he thought that he had a claim against the attorneys, he should concede to other counsel about that right away. That didn't happen. As counsel indicated, the facts of this case seem to be interesting. They seem to be very important. We didn't even get past a motion for dismissal. The dismissal was with prejudice. We ought to be afforded an opportunity to amend our complaint if the court finds that Section 204 does not expressly preempt all other statutes of limitation and repose. Of course, there's the exception for medical malpractice, which is contained in 204. But we're not concerned about medical malpractice. We're concerned about legal malpractice in the context of an implied indemnity case where the former attorneys gave every indication to Mr. Daley that they would take care of it. Are there other questions? Thank you, Mr. Frost. We thank both of you for your arguments this morning and afternoon. We'll take the matter under advisement and we'll issue a written decision.